**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4065
_____

EDNER PIERRE,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-244-476)
Immigration Judge: Honorable Annie Garcy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 22, 2010
Before:  SLOVITER, JORDAN and GREENBERG, Circuit Judges

(Opinion filed: July 26, 2010)
_____

OPINION
_____

PER CURIAM

Edner Pierre petitions for review of a decision of the Board of Immigration

Appeals (BIA).  For the reasons below, we will deny the petition for review.

Pierre, a citizen of Haiti, entered the United States in December 2006.  He applied

for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). He stated that he would be persecuted in Haiti based on nationality, political opinion, and membership in a social group. In March 2007, he was charged as removable as an alien present in the United States without being admitted or paroled. He conceded removability.

Pierre testified at his hearing that in July 2006, he was attacked in his home by ten neighbors who were members of the Lavalas group.[1] Armed with batons, machine guns, and a whip, they beat Pierre, his wife, and their children. He recognized the leader of the attack as a man named Smith Jeunes. He reported the attack to the police but did not name Smith Jeunes as a perpetrator. Pierre stated that the group was always trying to get him to join them for demonstrations in the street but that he did not join them because they destroyed property and beat people. He asserted that he received threatening phone calls from Jeunes after the attack. In September 2006, the group came looking for Pierre again. When they did not find him at home, they attacked his wife and children and threatened to kill Pierre. Pierre did not report this attack to the police. In November 2006, Jeunes came to his front door and called to him and Pierre ran out the back door. The group beat his family again. A.R. at 193-201.

---

[1] There is no clear description of Lavalas in the record. In his asylum application, Pierre stated that Aristide, the former president, was the leader of the members of Lavalas. A.R. at 278. He also stated that Lavalas was part of the coalition government. A.R. at 271. At his hearing, he testified that the group wanted the return of Aristide. A.R. at 213.

The IJ thoroughly discussed the evidence submitted and concluded that Pierre had not provided corroborative evidence or evidence of country conditions to support his claim. The IJ determined that Pierre had not established that the government of Haiti was unwilling or unable to control the man Pierre named as his persecutor. The IJ noted that Pierre had not given the police the name of his persecutor even though he knew him. The IJ also found that Pierre had failed to show that the persecution would exist throughout Haiti. The IJ believed that the attack on Pierre was not a political act and that Pierre's refusal to join them was not an expression of political opinion. The IJ concluded that Pierre had not claimed that he feared torture by any public official. Thus, the IJ denied Pierre relief.

The BIA dismissed Pierre's appeal. It agreed with the IJ that Pierre had not shown that the attack was on account of a protected ground. It concluded that his fear of future persecution was undermined by the fact that his family remained in Haiti unharmed. As for his CAT claim, the BIA determined that Pierre had not shown it was more likely than not that he would be tortured by or with the acquiescence of the government. Pierre filed a timely petition for review.

We have jurisdiction under 8 U.S.C. § 1252. To establish eligibility for asylum, Pierre must demonstrate either past persecution or a well-founded fear of future persecution in Haiti on account of race, religion, nationality, membership in a particular social group, or political opinion. See Vente v. Gonzales, 415 F.3d 296, 300 (3d Cir.

3

2005). For withholding of removal, he must demonstrate that it was more likely than not that his life would be threatened in Haiti on account of one of these protected grounds. Tarrawally v. Ashcroft, 338 F.3d 180, 186 (3d Cir. 2003); 8 U.S.C. § 1231(b)(3)(A). To be eligible for withholding of removal under the Convention Against Torture, he needs to demonstrate that it is more likely than not that he would be tortured if removed to Haiti. 8 C.F.R. § 1208.16(c)(2). We review the BIA's factual determinations under the substantial evidence standard. Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc). The BIA's findings are considered conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We exercise de novo review over the BIA's legal decisions. Toussaint v. Att'y Gen., 455 F.3d 409, 413 (3d Cir. 2006).

Pierre challenges the IJ's determination that he did not give police the name of his assailants and that this hindered the police in investigating the assault. He contends that the police officer did not ask Pierre for this information and Pierre should not be held responsible for the police officer's failure. He points to his testimony that had he given the police the name of the lead perpetrator, he would have to provide the names of the other attackers whom he did not know. Because the BIA issued its own decision on the merits, we review its decision and not that of the IJ. Kaplun v. Att'y Gen., 602 F.3d 260, 265 (3d Cir. 2010). The BIA did not rely on the IJ's determination. Moreover, we agree with the IJ that Pierre's failure to name Smith Jeunes would hinder any investigation.

4

Pierre also challenges the BIA's determination that he was not persecuted for political reasons. He contends there is no evidence to support the conclusion that his attackers were merely a gang. However, Pierre testified that he didn't want to join the group because of what they did: break and steal property, beat people, and create disorder and uprisings. A.R. at 195. While, in the most general sense, a preference for law and order over anarchy can be called a political viewpoint, Pierre has not shown that the record compels a finding that his political opinion was a primary reason he chose to avoid Smith Jeune's group and was thus allegedly attacked.

Pierre argues that the BIA erred in determining that his fear of returning to Haiti is diminished because his family has not been harmed since he left. He notes that he had been gone from Haiti for less than two years at the time of his hearing while the alien's family in In re A-E-M-, 21 I. & N. Dec. 1157 (BIA 1998), the case cited by the BIA, had been safe for over four years. He further asserts that the Lavalas group members were seeking only him. However, Pierre testified that before he left Haiti, his family was beaten twice when the group came looking for Pierre and did not find him. We agree with the BIA that his family's continued safety undermines his claim of future persecution. Pierre has not shown that the record compels a finding that he has a well-founded fear of future persecution. Furthermore, because he has not met the standard for asylum, Pierre cannot meet the higher standard for withholding of removal. Ghebrehiwot v. Att'y Gen., 467 F.3d 344, 351 (3d Cir. 2006).

5

With respect to his CAT claim, Pierre argues that the police effectively acquiesced to Pierre's torture by failing to take any action on the threats against Pierre. However, as noted above, Pierre failed to provide the police with information–Smith Jeune's name and role in the attack–that would have been helpful to an investigation. Pierre has not shown that the record compels a finding that he will likely be tortured if removed to Haiti.

For the above reasons, we will deny the petition for review.